UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

GURJIT SINGH, A-221-349-677,

Petitioner,

v.

TONYA ANDREWS, et al.,

Respondents.

No.  1:26-cv-0206 DC AC P

FINDINGS AND RECOMMENDATIONS

Petitioner, an immigration detainee proceeding through counsel, has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 and a motion for temporary restraining order.

I.   Factual Background

Petitioner is a native of India and entered the United States on November 15, 2024.  ECF No. at 1 at 9.  At that time, he was detained and issued a Notice and Order of Expedited Removal under 8 U.S.C. § 1225(b)(1) on the grounds of inadmissibility under 8 U.S.C. § 1182(a)(7)(A)(i)(I).[1]  ECF No. 6-1 at 13.  After petitioner expressed fear of being returned to his home country, he was referred for a credible fear interview.  Id. at 14-15.  However, an interpreter was not available and it appears that instead of interviewing petitioner the Department

---

[1]  For consistency, the undersigned will cite to the applicable United States Code sections throughout without reference to the corresponding section of the Immigration and Nationality Act.

1

of Homeland Security (DHS) issued him a notice to appear.[2] Id. at 14.  On December 18, 2024, due to petitioner's expressed fear, the expedited removal order was vacated and petitioner was issued a notice to appear and placed into removal proceedings under 8 U.S.C. § 1229a.  Id. at 9. The same day, the DHS issued a Notice of Custody Determination releasing him pursuant to the authority in 8 U.S.C. § 1226.  Id. at 8.  On December 27, 2024, the DHS issued an Interim Notice Authorizing Parole under 8 U.S.C. § 1182(d)(5)(A) and petitioner was released that day.  Id. at 2, 7.  While released, petitioner attended all of his hearings and visited the Immigration and Customs Enforcement (ICE) offices as directed.  ECF No. 1 at 9.  On September 26, 2025, petitioner was taken into custody at a scheduled check-in appointment.  ECF No. 6-1 at 2. Petitioner was issued a notice stating that his parole was being terminated because "[n]either urgent humanitarian reasons nor significant public benefit warrant your continued parole."  Id. at 4.  Petitioner was targeted for arrest because of a January 2025 felony arrest for possession of a controlled substance for sale.  Id. at 2.

II.     Procedural History

On January 12, 2026, petitioner filed a pro se petition for writ of habeas corpus under 28 U.S.C. § 2241 challenging his detention by the DHS.  ECF No. 1.  The petition asserts that petitioner's arrest and continued detention without a bond hearing violate due process.  Id. at 6. Respondents oppose the petition, arguing that petitioner's due process rights have not been violated because he is subject to mandatory detention under 8 U.S.C. § 1225(b)(2) and therefore not entitled to a bond hearing.  ECF No. 6.  They also argue that petitioner's arrest in January 2025 constitutes changed circumstances warranting his re-detention.  Id. at 3.  Petitioner, through appointed counsel,[3] filed a traverse reiterating that his due process rights have been violated and arguing that he is subject to § 1226, not § 1225, and therefore not subject to mandatory detention. ECF No. 8.  Petitioner further argues that even if his release was under § 1182(d)(5)(A) instead of § 1226, he obtained a liberty interest in his release and his re-detention without a bond hearing

////

---

[2]  It does not appear a credible fear interview ever took place.  ECF No. 1 at 9; ECF No. 6-1 at 2.
[3]  Petitioner was appointed counsel after respondents filed their answer.  ECF No. 7.

2

violated due process.  Id. at 4-5.  Petitioner has also filed a motion for temporary restraining order on the same grounds.  ECF No. 10.

### III.  Legal Standard

A writ of habeas corpus may be granted to anyone who is held in custody in violation of the Constitution or laws or treaties of the United States.  28 U.S.C. § 2241(c)(3); Magana-Pizano v. I.N.S., 200 F.3d 603, 609 (9th Cir. 1999) ("28 U.S.C. § 2241 expressly permits the federal courts to grant writs of habeas corpus to aliens when those aliens are 'in custody in violation of the Constitution or laws or treaties of the United States.'" (citations omitted)).  In federal habeas proceedings, the petitioner is required to prove their case by a preponderance of the evidence.  Davis v. Woodford, 384 F.3d 628, 638 (9th Cir. 2004).

### IV.  Statutory Framework

Petitioner argues that he is unlawfully detained because he is subject to § 1226, not § 1225(b)(2), and therefore entitled to a bond hearing before a neutral adjudicator.  ECF Nos. 1, 8.  He further argues that even if his release on parole was under § 1182(d)(5)(A), he acquired a liberty interest in his continued release, which entitles him to due process protections.  ECF No. 8 at 4-5.  Respondents argue that petitioner is not entitled to a bond hearing because he is subject to mandatory detention under § 1225(b)(2) and his January 2025 arrest constitute changed circumstances warranting his re-detention.  ECF No. 6.

Title 8 U.S.C. § 1225 governs the procedures by which the government may mandatorily detain "an applicant for admission."  Section 1225(a)(1) defines "an applicant for admission" as a noncitizen "present in the United States who has not been admitted or who arrives in the United States (whether or not at a designated port of arrival and including [a noncitizen] who is brought to the United States after having been interdicted in international or United States waters)." 8 U.S.C. § 1225(a)(1).

"[A]pplicants for admission fall into one of two categories, those covered by § 1225(b)(1) and those covered by § 1225(b)(2)."  Jennings v. Rodriguez, 583 U.S. 281, 287 (2018).  Both categories are subject to mandatory detention until a certain point or until certain proceedings have concluded.  Id.  Despite mandatory detention, applicants for admission may be temporarily

released on parole "for urgent humanitarian reasons or significant public benefit." Id. at 288 (citing 8 U.S.C. § 1182(d)(5), 8 C.F.R. §§ 212.5(b), 235.3 (2017)).  The "express exception to detention" under 8 U.S.C. § 1182(d)(5) "implies that there are no *other* circumstances under which [noncitizens] detained under § 1225(b) may be released." Id. at 300.  Accordingly, there is no statutory right to a bond hearing for noncitizens detained under § 1225(b). Id. at 296-97.  By regulation, release is available only where "the aliens present neither a security risk nor a risk of absconding."  8 C.F.R. § 212.5(b).

Section 1225(b)(1) applies to applicants for admission who are (1) "arriving in the United States" and are inadmissible under 8 U.S.C. § 1182(a)(6)(C) (for fraud or misrepresentation) or § 1182(a)(7) (for lack of valid documents); or (2) not natives or citizens of certain countries in the Western Hemisphere, inadmissible under 8 U.S.C. § 1182(6)(A) (for entry without admission or parole), inadmissible under 8 U.S.C. § 1182(a)(6)(C) or § 1182(a)(7), and have not affirmatively shown they have physically resided in the United States for a continuous period of two years prior to this determination.  8 U.S.C. § 1225(b)(1)(A)(i), (iii).  If a noncitizen subject to § 1225(b)(1) "indicates either an intention to apply for asylum" or "a fear of persecution," the immigration officer "shall refer the [noncitizen] for an interview by an asylum officer."  8 U.S.C. § 1225(b)(1)(A)(i)-(ii).  If after conducting a credible fear interview the asylum officer determines that the noncitizen has a credible fear of persecution, the noncitizen "shall be detained for further consideration of the application for asylum."  8 U.S.C. § 1225(b)(1)(B)(i)-(ii).  Where there is a positive credible fear determination, the United States Citizenship and Immigration Services (USCIS) has discretion to "issue a Form I-862, Notice to Appear, for full consideration of the asylum and withholding of removal claim in proceedings under [8 U.S.C. § 1229a]."  8 C.F.R. § 208.30(f).

Section 1226, on the other hand, "provides the general process for arresting and detaining aliens who are present in the United States and eligible for removal" and, under subsection (a), the government has broad discretion to detain or release. Rodriguez Diaz v. Garland, 53 F.4th 1189, 1196 (9th Cir. 2022) (citing Jennings, 583 U.S. at 288).  It also provides that "a detainee may request a bond hearing before an immigration judge at any time before a removal order

4

becomes final" and "an individual detained pursuant to § 1226(a) may request an additional bond hearing whenever he experiences a material change in circumstances." Id. at 1197 (citing 8 C.F.R. §§ 236.1(d)(1), 1003.19). Until 2025, "the DHS . . . applied § 1226(a) and its discretionary release and review of detention to the vast majority of noncitizens allegedly in this country without valid documentation." Salcedo Aceros v. Kaiser, No. 25-cv-06924 EMC, 2025 WL 2637503, at *3 (N.D. Cal. Sep. 12, 2025). "On July 8, 2025, however, DHS issued a memo to all employees of ICE stating that it had revisited its legal position on detention and release authorities and that § 1225 'is the applicable immigration detention authority for all applicants for admission.'" Altin v. Chestnut, No. 1:26-cv-0792 DC CSK, 2026 WL 309563, at *4 (E.D. Cal. Feb. 5, 2026).

V.     Discussion

A.     Due Process

In this case, there is some ambiguity as to whether petitioner was released on parole under § 1182(d)(5) or § 1226 because ICE issued separate documents to him stating that he was being released pursuant to each statute. See ECF No. 6-1 at 7-8. "Federal regulations provide that aliens detained under § 1226(a) receive bond hearings at the outset of detention." Jennings, 583 U.S. at 306 (citations omitted). However, parole under § 1182(d)(5)(A) is limited to "urgent humanitarian reasons or significant public benefit." Id. at 288 (citations omitted).

Petitioner asserts that after the government opts to proceed with full removal proceedings under § 1226, it "cannot reverse course and subject the noncitizen to expedited removal and mandatory detention under 8 U.S.C. § 1225." ECF No. 8 at 3 (citations omitted). Therefore, because the DHS issued him a Notice to Appear under § 1229a, he was placed into full removal proceedings and is entitled to a bond hearing under § 1226(a). Id. However, he asserts that even if the court determines that his release was under § 1182(d)(5)(A), he still had a liberty interest in his continued release. Id. at 4-5. Respondent does not address the disparity in the parole documents and simply argues that petitioner is detained under § 1225(b)(2) and therefore

////

////

5

mandatorily detained.  ECF No. 6.  The undersigned will assume without deciding that petitioner was paroled under § 1182(d)(5)(A).[4]

The Due Process Clause protects persons in the United States from being "deprived of life, liberty, or property, without due process of law."  U.S. Const. amend. V.  "[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent."  Zadvydas v. Davis, 533 U.S. 678, 693 (2001) (citations omitted).  "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects."  Zadvydas, 533 U.S. at 690.

"Even when a statute allows the government to arrest and detain an individual, a protected liberty interest under the Due Process Clause may entitle the individual to procedural protections not found in the statute."  Omer G.G. v. Kaiser, No. 1:25-cv-1471 KES SAB, __ F. Supp. 3d __, 2025 WL 3254999, at *5 (E.D. Cal. Nov. 22, 2025) (citing Young v. Harper, 520 U.S. 143, 147-49 (1997); Gagnon v. Scarpelli, 411 U.S. 778, 782 (1973); Morrissey v. Brewer, 408 U.S. 471, 482 (1972)).  "[A] substantial number of district courts in the Ninth Circuit have found that noncitizens paroled into the United States under § 1182(d)(5) have a liberty interest in their continued release and are entitled to certain due process protections."  D.L.C. v. Wofford, No. 1:25-cv-1996 DC JDP, 2026 WL 25511, at *4 (E.D. Cal. Jan. 5, 2026) (collecting cases); Flores v. Chestnut, No. 1:26-cv-0078 TLN CSK, 2026 WL 504650, at *4 (E.D. Cal. Feb. 24, 2026) (court did not need to determine whether petitioner was detained under § 1225 or § 1226 because she "had a protected liberty interest in her release, regardless of which detention statute applies." (collecting cases)).

> Specifically, this court has found that the Due Process Clause requires that, in order for the government to re-detain a noncitizen who has been previously released on bond or conditional parole under 8 U.S.C. § 1226(a), or humanitarian parole under 8 U.S.C. § 1182(d)(5), the government must provide a pre-deprivation bond

---

[4] The court notes that if petitioner was detained and released under § 1226(a), he was statutorily entitled to a bond hearing, Jennings, 583 U.S. at 306, and his due process rights have been violated because he did not receive one prior to his parole revocation.

6

> hearing before a neutral arbiter at which the noncitizen's eligibility for bond must be considered.

Cesar Luis v. Warden, No. 1:26-cv-1823 DC SCR, 2026 WL 700713, at *1 (E.D. Cal. March 12, 2026) (collecting cases). The undersigned therefore finds that petitioner has established a liberty interest in his continued release.

Respondent's assertion that petitioner was arrested for possession of a controlled substance for sale, constituting a changed circumstance justifying the revocation of parole, does not change this outcome. The arrest at issue took place in January 2025, but petitioner's parole was not revoked until September 2025, over eight months later. By initially releasing petitioner on parole, the government necessarily determined that he was "neither a security risk nor a risk of absconding," 8 C.F.R. § 212.5(b), and there is no evidence that petitioner's arrest changed that assessment. Moreover, by permitting petitioner to remain at liberty for nine months, eight of which elapsed after his arrest, the government enabled petitioner to develop a protected liberty interest in remaining out of custody.

Having determined that a liberty interest exists, the court must now examine what process is due. See Ky. Dep't of Corrs. v. Thompson, 490 U.S. 454, 460 (1989) (the court "first asks whether there exists a liberty or property interest which has been interfered with" and then "examines whether the procedures attendant upon that deprivation were constitutionally sufficient").

To determine what process is due, the court considers three factors:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

Mathews v. Eldridge, 424 U.S. 319, 335 (1976). Due process rights in the immigration context "must account for the government's countervailing interests in immigration enforcement." Rodriguez Diaz, 53 F.4th at 1206.

////

7

With respect to the first factor, petitioner has a strong private interest in remaining free from detention. Zadvydas, 533 U.S. at 690 ("Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects."). Petitioner was out of custody for nine months prior to his re-detention and states that while in detention he is unable to properly practice some of the tenets of his religion and is suffering from mental and physical health issues. ECF No. 1 at 9. He asserts, and respondent does not dispute, that during the time he was on parole he did not miss any of his appointments or check-ins, and there is no indication that petitioner did not cooperate with immigration authorities during his release. Id. This factor therefore weighs in petitioner's favor.

The second factor, the risk of erroneous deprivation, also weighs in petitioner's favor. Considering that petitioner has been detained for approximately six months without being provided a bond hearing, the risk of erroneous deprivation is high. See A.E. v. Andrews, No. 25-cv-0107 KES SKO, 2025 WL 1424382, at *5 (E.D. Cal. May 16, 2025) ("The risk of an erroneous deprivation [a petitioner's] interest is high where [h]e has not received any bond or custody redetermination hearing[.]" (alterations in original) (citation and internal quotation marks omitted)); R.D.T.M. v. Wofford, No. 1:25-cv-01141 KES SKO, 2025 WL 2617255, at *6 (E.D. Cal. Sept 9, 2025) ("Civil immigration detention, which is 'nonpunitive in purpose and effect[,]' is justified when a noncitizen presents a risk of flight or danger to the community." (alteration in original) (citations omitted)). Although respondents argue that petitioner was arrested in January 2025 for possession of a controlled substance for sale, they argue only that this constitutes "changed circumstances." Respondents do not argue that petitioner's arrest make him a flight risk or danger to public safety, and no neutral arbiter has determined that the arrest itself or any other factors show petitioner is a flight risk or danger to the community.

Finally, while the government has an interest in enforcing its immigration laws, "its interest in detaining petitioner without a hearing is 'low' and custody hearings in immigration court "are routine and impose a 'minimal' cost." R.T.D.M., 2025 WL 2617255, at *6 (citing Ortega, 415 F. Supp. 3d at 970; Doe v. Becerra, 787 F. Supp. 3d 1083, 1094 (E.D. Cal. 2025)).

////

8

For these reasons, the court finds that the government's interest in detaining petitioner without a hearing is low and does not outweigh petitioner's substantial liberty interest or the high risk of erroneous deprivation of liberty and respondents were required to provide him with a pre-deprivation hearing prior to revoking his parole.  Respondents point to no reasons why a pre-deprivation hearing could not be held, and provide no evidence of "urgent concerns" warranting petitioner's re-detention without a hearing, thus, "a pre-deprivation hearing is required to satisfy due process." Guillermo M.R. v. Kaiser, 791 F. Supp. 3d 1021, 1036 (N.D. Cal. 2025) (finding no urgency where ICE waited over six weeks after petitioner's arrest by local law enforcement to arrest and re-detain petitioner).

CONCLUSION

Accordingly, IT IS HEREBY RECOMMENDED that:

1. Petitioner's petition for writ of habeas corpus (ECF No. 1) be GRANTED, as follows:

    a. Respondents shall IMMEDIATELY RELEASE petitioner Gurjit Singh, A-221-349-677, immediately with the same conditions he was subject to immediately prior to his detention on September 26, 2025.  At the time of release, respondents must return all of petitioner's documents and possessions.

    b. Respondents shall not impose any additional restriction on petitioner unless it is determined to be necessary at a future pre-deprivation/custody hearing.

    c. Respondents are ENJOINED AND RESTRAINED from re-detaining petitioner unless they provide at least 7 days' notice to petitioner and hold a pre-deprivation bond hearing before a neutral arbiter, at which petitioner's eligibility for bond must be considered.

2. Petitioner's motion for a temporary restraining order (ECF No. 10) be DENIED as moot.

3. Within three days of an order adopting these findings and recommendations, respondents be required to file a notice of compliance confirming petitioner's release and that the conditions of his supervision are the same as those to which he was subject prior to his September 26, 2025 detention.

4.  The Clerk of the Court be directed to enter judgment for petitioner and close this case.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  The undersigned finds that a shortened objection period is warranted in this case given the nature of the relief at issue as well as the fact that the parties have had sufficient time to submit all of their arguments in written briefs.  See United States v. Barney, 568 F.2d 134, 136 (9th Cir. 1978) (per curiam) (stating that 28 U.S.C. § 636(b)(1) sets the maximum objection period and not the minimum); see also Local Rule 304(b).  Within **three** days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the objections shall be filed and served within **three** days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: March 18, 2026

allison Clane

ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE

10